ANTON KAUFMANN, a minor, by MOLLY KAUFMANN, his mother and next friend, Plaintiff-Appellant, *v.* FIRESTONE TIRE & RUBBER COMPANY *et al.*, Defendants-Appellees.

(No. 54813;

First District—January 17, 1972.

John W. Gustafson, Hickey, Gustafson & Peterson, of Chicago, (Joseph B. Lederleitner, of counsel,) for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, (Francis B. Libbe and John M. O'Connor, Jr., of counsel,) for appellees.

Mr. JUSTICE BURKE delivered the opinion of the court:

This was an action to recover for personal injuries sustained by plaintiff, a minor, when the bicycle which he was operating was struck by a pickup truck owned by defendant Firestone Tire & Rubber Company and operated by defendant Donald Shaffer. The jury returned a verdict in favor of both defendants and against plaintiff, and judgment was entered thereon. Plaintiff appeals.

The mishap occurred between 3:30 and 4:00 P.M. on May 8, 1963, at the intersection of Irving Park Road and Ravenswood Avenue in Chicago. Irving Park Road, at the point of the mishap, is a six-lane, east-west thoroughfare consisting of four moving lanes of traffic and two parking lanes. Ravenswood Avenue at that point runs in a north-south direction, to the east of Chicago and Northwestern Railway elevated train tracks, and both northbound and southbound Ravenswood traffic is controlled by stop signs at its intersection with Irving Park Road. Immediately to the west of Ravenswood Avenue, Irving Park Road runs under an overpass supporting the elevated train tracks. The sidewalk running along the north side of Irving Park Road and under the overpass is several feet higher than the street level and descends by way of steps to the street at the northwest corner of the intersection. It appears that the sidewalk at the northeast corner of the intersection is at the normal height above the street.

Plaintiff testified at trial that on May 8, 1963, he was fourteen years of age, and that he was employed as a drugstore errand boy and operated the bicycle involved in the mishap in the course of his duties as such. He stated that an errand took him to the area of Irving Park Road and Ravenswood Avenue and that while running the errand he was accompanied by a friend, Steve Languth, who was seated on the crossbar of the bicycle. The witness testified that traffic along Irving Park Road was getting heavy due to the rush hour, and that as a result he operated the bicycle on the sidewalk adjacent to that street.

Plaintiff testified that he and his companion had been traveling on the bicycle in an easterly direction along Irving Park Road and that when they were beneath the elevated train overpass, they crossed from the south side of Irving Park Road to the north sidewalk. When he and his companion reached the stairs of the sidewalk at the northwest corner of the intersection, they alighted from the bicycle, "walked" the bicycle down the stairway, and then got back onto the bicycle and continued to ride in an easterly direction in the north crosswalk on Ravenswood Avenue. Plaintiff testified that prior to attempting to cross Ravenswood Avenue, he looked for traffic both to the north and to the south along Ravenswood, and that he observed a truck to the south of Irving Park Road,

traveling north on Ravenswood Avenue, about twenty feet south of the stop sign. He testified that he and his companion got to a little beyond halfway across Ravenswood Avenue and that the truck which the witness had seen south of the stop sign struck the rear portion of the bicycle, throwing plaintiff and his companion to the street and knocking over the bicycle. The police arrived shortly and plaintiff was taken first to his home and then to a hospital for treatment of injuries.

Plaintiff's brother testified to facts relating to plaintiff's physical condition both prior to and subsequent to the accident. Plaintiff's treating physician also testified to injuries sustained by plaintiff as a result of the mishap.

Defendant Shaffer testified that on May 8, 1963, he was operating the Firestone Tire truck in a northerly direction along Ravenswood Avenue, from Addison Street approaching Irving Park Road. The witness testified that when he reached Irving Park Road he brought the truck to a stop at the stop sign on the south side of that street. He waited at the stop sign for the eastbound traffic to clear on Irving Park Road and then approached the center of that street, waiting for the westbound traffic to clear. When the westbound traffic cleared, the witness proceeded across the remaining lanes of Irving Park Road when he noticed" a movement on the right side of my eye;" he noticed the plaintiff and his companion on the bicycle out of "the corner of my eye * * * a split second before the collision." The witness stated he applied the brakes of the truck immediately upon seeing the bicycle, that the truck stopped instantly, and that the front end of the truck struck the front portion of the bicycle.

Shaffer further testified that he did not see the plaintiff, his companion or the bicycle prior to the mishap, that he did not know which way they were traveling on the bicycle, but that he thought that they were proceeding in a westerly direction. In surrebuttal, Shaffer testified that after the mishap he asked plaintiff's companion "where they came from" and that plaintiff's companion answered that they came "from between the car, the parked car and the curbing." The witness further testified that he had been traveling three or four miles per hour prior to the impact with the bicycle, and that there was a car parked near the crosswalk at the northeast corner of the intersection.

At the close of defendants' case, plaintiff's counsel called Steve Languth for the alleged purpose of testifying as a rebuttal witness. It appears that Languth had been in court the day that plaintiff had put on his case-in-chief, but that he was told by the counsel for plaintiff to go home and to return the next day; the witness was not called as a witness during plaintiff's case-in-chief.

Languth testified on direct examination that he was seated on the crossbar of the bicycle, that plaintiff was operating the bicycle, and that the bicycle was struck by the truck being operated by defendant Shaffer. Objections to questions asked the witness concerning the direction which the bicycle was traveling prior to the impact and the place in the crosswalk where the bicycle was struck, were sustained by the trial court on the ground that the questions did not relate to rebuttal of defendants' evidence, but rather constituted direct evidence relating to the mishap which the plaintiff could have adduced during his case-in-chief.

In later testimony, however, the witness stated that the bicycle was traveling in an easterly direction in the crosswalk and that it was struck near the east curb of Ravenswood Avenue. Languth denied that he told defendant Shaffer that he and plaintiff had ridden out from between the curb and a parked car. The defense also questioned Languth concerning statements made in a pre-trial deposition, relating to the stopping of the truck, whether the witness saw the truck before the impact, and how far away it was. The defendants moved that Languth's testimony be stricken, inasmuch as it could have been elicited during plaintiff's case-in-chief, but the trial court allowed the testimony to stand "for whatever it is worth."

Plaintiff initially contends that the treatment of his witness, Steve Languth, by the trial court and by defense counsel was highly prejudicial and requires reversal. We disagree.

■■ Steve Languth was available as a witness during plaintiff's case-in-chief, but he was not called then. He testified that he spoke to plaintiff's counsel in the hallway outside the courtroom on the day that plaintiff put on his case-in-chief, that counsel asked him the direction the bicycle was traveling when struck by the truck and where it stopped after the impact, and that the witness was then told to go home and return the next day. From a review of the testimony given by Mr. Languth in his alleged role as a rebuttal witness, it is clear that all such matters tended to corroborate plaintiff's testimony concerning the mishap and could have been brought out during plaintiff's case-in-chief. Under the circumstances, the trial court properly restricted plaintiff's questioning of Mr. Languth in his role as a rebuttal witness. From the record, it does not appear that the case revolved around the testimony of Mr. Languth, but rather the jury chose to believe the evidence adduced by the defendants rather than that adduced by the plaintiff.

■■ Plaintiff further contends that defense counsel's closing argument to the jury concerning the alleged role of a rebuttal witness was prejudicial error. Plaintiff has failed to fully abstract the final argument of defense counsel and has failed to abstract plaintiff's counsel's total final

argument. (See *Nappier v. Cobb,* 78 Ill.App.2d 419, 420.) Plaintiff cannot be heard to raise this matter on appeal.

The cases cited by plaintiff in support of his position are distinguishable on their facts from the case at bar. He argues that because he was a minor the court had the special duty to see that his rights were protected, citing *Muscarello v. Peterson,* 20 Ill.2d 548. In the *Muscarello* case, not only was the plaintiff a minor, but someone connected with the defendant tampered with evidence relating to the primary issue in the case, the causation of plaintiff's injuries. That case presented strong grounds for reversal, although no objection was made by plaintiff's counsel to the introduction of an expert opinion which was based upon the evidence which had been tampered with. Here, on the other hand, no such situation is presented. Plaintiff attempted to introduce Mr. Languth as a rebuttal witness, whereas he was available as a witness and testified to facts which could have been brought out in plaintiff's case-in-chief.

Likewise, in *Izzo v. Zera,* 57 Ill.App.2d 263, the court on review stated concerning prior inconsistent statements of a witness, that the jury was at liberty to choose whether the witness was mistaken or was corrupt in his testimony from the stand. The jury in the instant case heard the testimony of Mr. Languth in light of his statements during the pre-trial deposition, and had the duty of judging his credibility.

■■ The plaintiff further contends that it was prejudicial error for the trial court to refuse to give the circumstantial evidence instruction tendered by the plaintiff. On the contrary, the evidence in the record relating to the mishap is direct evidence and would not support an instruction on circumstantial evidence. See IPI 1.03.

Plaintiff's cases cited in support of this position involve situations where the introduction of circumstantial evidence required the giving of an instruction thereon and for that reason they have no application to the case at bar. See *Marian v. Lena Pellet Co.,* 120 Ill.App.2d 131; *Endurance Paving Co. v. Pappas,* 117 Ill.App.2d 81.

■■ Plaintiff's contention that the verdict is against the manifest weight of the evidence and is the result of the numerous and serious errors (as alleged and argued by plaintiff above) is without merit.

There was sufficient competent evidence adduced by the defendants from which the jury could have found no negligence on their part in the mishap, and whatever conflict there may have been in the evidence as a whole was resolved by them. From all the circumstances of this case it is clear that plaintiff received a fair trial. Further, what had been determined above with regard to the plaintiff's allegations of error committed at trial obviates his contention that the verdict is a product of those alleged errors.

Plaintiff's final contention relating to the testimony of his treating doctor concerns injuries and damages. It is therefore unnecessary to resolve that issue in light of the determination made on the question of liability.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS and STAMOS, JJ., concur.